Adam Clerk, please call the next case. 1-6-0143 James Stanley v. Workers' Compensation Comm'n Counsel, you may proceed. May it please the Court. Good morning, Justices, Counsel. Andrew Kriegel on behalf of the appellant James Stanley. A brief overview of this. This is regarding three different injuries sustained by a stand-up forklift operator employed by a company called Thresh Express. The first injury was September 10th, 2010. The second injury was October 12th, 2011. And the third injury was February 25th, 2012. The appellant contends that the commission erred as a matter of law in its determination that the plaintiff did not sustain a torn meniscus as a result of his September 12th, 2010 injury. Wait, did you say the commission erred as a matter of law? Yes, based on the chain of events theory of causation. It can't be a matter of law. It's a factual question when you have medical evidence lining up on both sides of the issue. It's a factual question, not a legal question. Okay? Respectfully, Your Honor, I disagree. But even with a factual question, I do believe the commission still erred based on the fact. That's a better argument. Weight of the evidence. The injury is undisputed. Let me rephrase that. Petitioner's first injury is undisputed. He was crushed by a forklift. He sustained bilateral crush injuries. And the commission, I believe, used the word clearly. He sustained. So that's not really an issue. Okay. It's the meniscus. Yes. That's the issue. Yes. The petitioner followed up with Dr. Khanna from the company clinic, occupational medicine doctor, after his first visit to the ER. Nine days later, Dr. Khanna recommends an MRI. Dr. Khanna reviews the MRI, diagnoses petitioner with a torn left meniscus. She refers him to Dr. Gianalis, who's an orthopedic surgeon. He's seen by Dr. Gianalis on September 28th, and the doctor diagnoses him with a torn meniscus. And so did Dr. Zaradoulis. He also. Yes, Your Honor. All three of those doctors. What did Dr. Miller say? Dr. Miller saw him petitioner in February of 2012. This was significantly after the incident. Dr. Miller and the commission, I'm going to read their language. There was, Dr. Miller agreed there was a signal on the MRI, but it was a grade 2 signal, which indicated 10 to 20 percent possibility of a tear. So Dr. Miller, the defendant's hired expert, agrees there may be a tear. He didn't say that there was claimant did not suffer a meniscal tear? He didn't say that? I'm sorry? He did. Yeah? But he also said a grade 2 signal represents a 10 to 20 percent possibility there is an actual tear. But his opinion was it was not. Yes. Okay. Yes, Your Honor. All right. And what about, didn't Dr. Zaradoulis also express doubt as to whether the claimant's symptoms were related to the meniscal tear? Isn't that in the mix as well? Yes, Your Honor. And that was because petitioner was experiencing severe swelling in his legs. Dr. Zaradoulis believed that may be from a venous injury. He underwent x-rays and was at risk for the venous injury, which was found to be not something that he suspected. So while you're arguing the commission's finding itself was against the manifest way of the evidence, you would have to agree that there was conflicting medical testimony, correct? Yes, I do agree with that, Your Honor. And the commission didn't find your claim credible, did they? Well, I disagree with the commission's assessment there based on the facts that were presented. Well, I figured you'd disagree. But the fact of the matter is they found him not credible. They had a couple of reasons why they found him not credible. They noted that the claimant testified that he injured his right knee, but the medical records reflected he was treated for his left knee. And they also indicate that it was questionable, supported by the fact that when he presented to the emergency room at Mercy Hospital, he didn't reference any work-related injury and denied any new trauma, twisting, or injury. Was that after the second injury in October of 2011, Your Honor? Yes. I want to address that. First of all, the treating doctors who treat a patient when he comes into the hospital are not in the business of giving a causational opinion. They document the injury the patient has and how the injury occurred. He didn't reference any work-related injury, according to them, at all. There was no trauma. There was no twisting. There was no ñ I mean, mechanics of injury is important to a doctor. He went in and gave a history that he was getting off of a forklift at work. He is a stand-up forklift operator and stands on a 9-to-10-inch platform and drives a stand-up forklift to pick produce. Dr. Serradellis notes the patient was lifting and felt pain and unable to continue working regarding the October 2011 injury. Lifting, in the doctor's notes, may mean the patient was on a forklift lifting an order with the forklift. Again, these doctors are not in the position of saying the petitioner sustained a causally-related injury arising out of and in the course of his employment. The medical records are consistent with the petitioner's testimony that he was operating his stand-up forklift at work and he sustained a subsequent knee injury. Did he testify in direct examination that he injured his knee when he was stepping off of the forklift? Yes, he did. And then at cross-examining, he said he was just standing on the forklift? Yes, Your Honor. Don't you think that's an inconsistency and the commission can say we've got a little problem going on here? It is ñ there is some inconsistency there, Your Honor, but again, this was heard some time after his incident when he presented to the doctor shortly after this happened. His histories were consistent, and that's documented in the medical records. And I would say the February 2012 injury, the petitioner testified he reported that injury to his supervisor. He was operating a stand-up forklift and transferred his weight wrong and felt sudden pain. Dr. Sassett, petitioner's treating physician, documents that petitioner was driving a stand-up forklift and felt a pop in his knee. In my opinion, Justices, this is consistent, credible testimony from the petitioner as to how the injury occurred. And based on my argument there, I believe that petitioner would be entitled to his TTD benefits for the time he was off work after this. If we agree with the argument there. If we don't agree with it, then the TTD benefit argument obviously becomes moot. Yes, Your Honor. Okay, thanks. And I'd like to rest my brief regarding the penalties. Thank you. You have asked for. Very good. Thank you, counsel. Thank you. Counsel, you may respond. Good morning, Justices, counsel. May it please the Court, Elizabeth Capoletti on behalf of the employer, Fresh Express. We do have three different accidents here. The first accident in September of 2010 is in regards to the meniscal tear. And Dr. Milner was clear. He said that there was no meniscal tear. And the confusion I think you really hear was, and Dr. Milner explained it, was the other doctors just relied on an over-interpretation of the radiologist's reading of the MRI. And Dr. Milner actually had the opportunity to read the films himself. And in reading the actual films himself, he felt it was only a grade 2 signal, therefore no tear, as well as the fact that the physical examination did not correlate to a meniscal tear, which was also consistent with Dr. Sarah Dulles's opinion, that he didn't think that the pain complaints were related to a meniscal tear. And you argue that that's enough for the commission to find? Absolutely. I think that that's sufficient evidence in the record to support the commission's finding of two doctors and a doctor who specifically actually saw the MRI films. Relative to the October 12, 2011 accident, the commission made a specific finding that the claimant was not credible. And they based that finding on his inconsistencies in both his trial testimony as well as the histories provided to the doctor. And the same as to the February accident, they also did not find there was an accident, right? That's correct. In the February accident, they also found his credibility lacking, and they also specifically indicated there was really no accident. Even if you took his testimony at face value, he testified that he was merely shifting his weight while he was standing on a forklift. So they questioned his credibility, but even giving him the benefit of the doubt, they said it's not an accident. And I think that was very specific, too, in the October of 2011. He was very clear in his testimony that initially it was the left knee, but then he clarified it and said, no, it's my right knee that I hurt. But then, again, all the medical treatment was for the left knee. And when he did go see the medical providers first at the ER at Mercy, he gave a history of a year-long complaints of knee pain with a three-day kind of increase in symptoms. He told the ER doctor, again, there was no trauma, no injury. And then he went to the clearing clinic exactly that same day, provided a history to the doctors that he had been in the ER, complaining of chronic knee pain. And then, very importantly, he said to the doctors, don't call the company because I haven't made out a claim. I want to put this through my group health insurance. And that weighed in specifically to the commission's decision. They just didn't believe him. I mean, his inconsistencies were too much at the trial as well as the medical histories provided. So I would submit that there is sufficient evidence in the record to support the commission's decision. Thank you, counsel. Thank you. Counsel, you may reply. Justices, I'd just like to address, first of all, Dr. Miller's review of the MRI films. It's my assertion that there's a question of fact whether Dr. Miller even reviewed these films. His testimony is inconsistent at page 831 of the record. Dr. Miller testified he did not see any of the MRI films and only reviewed the report. He further testified that he had not seen the actual MRI films and could not comment whether he agreed with them or not, and that he never asked for those films. Dr. Miller later went on to correct himself and say, I did review these films, but his credibility is at issue there. Yeah, but again, isn't that for the commission to decide whether the inconsistencies undercut his credibility? I mean, doesn't this happen frequently in your experience? Doctors sometimes will correct or modify a decision, not redirect or cross. Doesn't that happen? Yes, Your Honor. Okay. The next issue I'd like to address is the counsel's assertion that even if the February injury did occur, that it wasn't something arising out of the employment at work. And an injury arises out of the employment if the employee is doing something that he should be, he or she should reasonably be expected to perform as part of their job duties. The general public isn't operating a stand-up forklift every day. This is different than walking down the street or walking through the hallway at the office. This is climbing on a 10-inch platform operating a piece of heavy machinery. And it's part of his job duties. And therefore, if he gets injured doing what he's expected to do, it should be compensable. Yes, Your Honor. That's all I have on that one. Okay. Well, thank you, counsel, both for your arguments in this matter. It will be taken under advisement and written disposition, shall I?